JOSEPH SMITH, Appellant, *v.* DAMON I. BUTLER, Respondent.

Second Department, January 29, 1926.

Vendor and purchaser — contract for sale of property then in foreclosure proceedings if vendor acquired title — land was held by cotenants, one of whom was incompetent — vendor was other cotenant — sale twenty days after first publication of notice was not legal under Civil Practice Act, § 986 — vendor who purchased on foreclosure held title subject to trust in favor of incompetent — title is not marketable and vendee is entitled to recover down payment.

A vendee of real property is entitled to recover from the vendor payment made on the execution of the contract, where it appears that by the terms of the contract the vendor agreed to sell the property, which was then in foreclosure proceedings, provided he acquired title at the foreclosure sale; that the property was owned by the vendor and an incompetent person as cotenants; that the foreclosure proceedings were instituted for the purpose of straightening out the title; that the sale on foreclosure was made twenty days after the first publication of notice; and that the vendor purchased the property at the foreclosure sale.

The sale in the foreclosure proceedings was invalid, since it was made in less than twenty-one days after the first publication of notice of sale in violation of section 986 of the Civil Practice Act, which requires, under the circumstances involved, twenty-one days to elapse between the first publication of notice of sale and the sale.

Furthermore, the purchase by the vendor at the foreclosure sale was subject to the rights of the incompetent cotenant and his title is, therefore, impressed with a trust in favor of said cotenant and he cannot, therefore, transfer a marketable title.

Manning, J., dissents, with opinion.

Appeal by the plaintiff, Joseph Smith, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 8th day of July, 1925, upon the decision of the court rendered after a trial at the Richmond Special Term.

The judgment dismisses the complaint unless the plaintiff, within fifteen days after entry of judgment, completes his purchase of the premises mentioned in the complaint.

*John P. Wier*, for the appellant.

*John M. Braisted*, for the respondent.

Jaycox, J. The plaintiff, the vendee, under a contract of sale, brought this action to recover the earnest money paid by him upon signing the contract, and the expenses of examining the title. The contract upon which the action is based recited that a foreclosure action " for the purpose of straightening out the title " was then pending, and the title should be closed after the termination of that action provided the defendant became the purchaser, and with proper provisions for returning the earnest money if the defendant did not purchase at the foreclosure sale. The purchase price under the contract was $9,000, $1,500 being paid upon signing the contract and the balance was to be paid by the purchaser signing and delivering a purchase-money mortgage for the sum of $7,500. Upon the foreclosure sale the defendant, the vendor in the contract, became the purchaser and is ready and willing to deliver a deed upon plaintiff's compliance with said contract, but the plaintiff declines to proceed and asks his money back upon the ground that the defendant did not get good title under said foreclosure and that the title tendered to plaintiff is defective.

The facts are stipulated as follows: The premises were purchased in 1915 by one Augusta W. Walter. They were then subject to a mortgage for $2,500. Augusta W. Walter died intestate September 9, 1921, seized of said premises, leaving as her only heirs at law the following brothers and sisters: Emil Walter, Herman Walter, Emma I. Butler and Louise F. Walter, all of full age and sound mind except Emil Walter, an incompetent person. On June 28, 1923, Emma I. Butler, Louise F. Walter and Herman O. Walter conveyed their share in said premises to Damon I. Butler, the husband of Emma I. Butler, and thereby he became the owner of three

undivided fourths thereof and Emil Walter was the owner of the other undivided one-fourth part thereof.

It was further stipulated that the notice of sale was published twice a week for three successive weeks, commencing September 24, 1924, and ending October 11, 1924, and the sale took place October 14, 1924, making an actual period of twenty days between the first publication and the sale.

The plaintiff claims that this publication is not a compliance with the section of the Civil Practice Act governing such publication (§ 986), and also that the title of the defendant is impressed with a trust in favor of Emil Walter, who was his cotenant prior to the foreclosure sale.

In *City of Albany* v. *Goodman* (203 App. Div. 530) a statute* requiring " notice to be published once each week for three weeks " was under consideration by the court. Eighteen days had elapsed between the first publication and the sale. The court said: " We believe the intent of this statute is that there must be three weeks during which public notice of the sale is given prior to the sale; that the sale is not valid unless the first publication is had twenty-one days before the sale. Otherwise there is not a publication for three weeks."

*Matter of Wright* (224 N. Y. 293) involved the publication of a citation. That publication was made under section 2528 of the Code of Civil Procedure, which required a publication of " not less than once in each of four successive weeks," and the court held: " ' In each of four successive weeks ' requires a period of twenty-eight days between the day of the first publication of the notice and the return day thereof, or the period for which notice is given, although apparently for four weeks, will be uncertain and in some cases not only materially less than four weeks, but it may in some cases be materially less than in others, as the exact time will depend upon the particular days upon which the publication is made."

Section 986 of the Civil Practice Act provides that the notice of sale under the circumstances involved here shall be published " at least twice in each week for three successive weeks." The language which prescribes the period during which this publication shall be made is identical with that involved in *Matter of Wright* (*supra*) and must receive the same construction.

Upon this subject many contradictory decisions have been made, and it is probably impossible to reconcile them, and it certainly seems unnecessary to discuss them here.

In *Matter of Wright* (*supra*) the court said: " No reason has been

---

* See Second Class Cities Law, § 37.— [REP.

suggested except the slight difference in the wording of the statutes for a different rule in computing the time for the service of a citation than is required in computing the time for the service of a summons. Uniformity of rule is desirable and the statutes should have a construction to sustain such uniformity unless a different rule was intended by the Legislature."

Uniformity of rule for the computation of the time for the publication of all notices is desirable, and the decision in *Matter of Wright* (*supra*) harmonizes the rule in relation to the publication of a citation and a summons. Much of the difficulty which arose in relation to the computation of the time for publication of a summons was caused by section 441 of the Code of Civil Procedure, which declared that the time should be complete upon the day of the last publication, and section 787 of the Code of Civil Procedure which declared that the period of publication must be computed so as to include the day which completes the full period of publication. The result was to necessarily require seven publications instead of six. (*Brooks* v. *Brooks*, 190 App. Div. 564.) This difficulty has, however, now been obviated by rule 51 of the Rules of Civil Practice which provides: " service by publication is complete on the forty-second day after the day of first publication." To now hold that the publication in this case is not complete until twenty-one days after the first publication, it seems to me, harmonizes all the rules in relation to service by publication and the publication of notices of sale.

As a result of the sale in the foreclosure action, is this property in the defendant's hands impressed with a trust in favor of Emil Walter? In the contract for the sale of this property, made by the plaintiff and the defendant, this clause appears: " That a foreclosure action is now pending for the purpose of straightening out the title." The conclusion is inescapable that the foreclosure was being conducted in the interest of the defendant. The manner in which the title was to be " straightened out " is equally apparent, and that was by eliminating the interest of the incompetent therein. That the defendant sought to accomplish this result without any evil intent and perhaps with the laudable desire of being better able to care for the incompetent, is not at all unlikely, but courts cannot depend upon belief in fair motives and generosity for the protection of incompetents. The interest of the incompetent must be positively protected, and the methods adopted by the defendant do not accomplish that result. This court, at Special Term, after reviewing all the authorities upon the subject, came to the conclusion that the defendant's title was impressed with a trust in favor of his former cotenant and that the defendant should

hold as trustee for his cotenant one-fourth of the proceeds of the sale. But this conclusion contained in the opinion of the court was not carried into execution in the judgment. In the light of the above quotation from the contract, and in view of the circumstances of the parties, the defendant being the brother-in-law of his cotenant and that cotenant being an incompetent, it is apparent that the foreclosure mentioned in the contract was instituted in the interest of the defendant, and that any title acquired by him by reason thereof is impressed with a trust in favor of his cotenant. (*Carpenter* v. *Carpenter*, 131 N. Y. 101; *Thayer* v. *Leggett*, 229 id. 152.)

*Carpenter* v. *Carpenter* (*supra*) involved the question of the purchase of an outstanding mortgage and a foreclosure of same. The court said (ANDREWS, J., p. 109): " The transaction by which some of the tenants in common claim to have acquired the whole estate to the exclusion of their cotenants, cannot be upheld within the principle of many cases. (*Van Horne* v. *Fonda*, 5 John. Ch. 388; *Knolls* v. *Barnhart*, 71 N. Y. 474; *Rothwell* v. *Dewees*, 2 Black [U. S.] 613; *Dubois* v. *Campau*, 24 Mich. 361.) The defendants and the plaintiffs had a community of interest in a common title, arising under the devise. The defendants, or some of them, were in the actual possession and control of the common property. They were bound to do nothing with a view to prejudice the interests of the plaintiffs. They could not buy in an outstanding title to defeat the right of their cotenants. If the foreclosure of the mortgages was a proceeding hostile to the defendants, and they had not been in default, and their purchase was made of necessity to protect their own rights, with full knowledge of the situation on the part of the plaintiffs, the moral, and perhaps the legal, aspect of the case would be altered."

In that case all but two of the plaintiffs were infants, and in the present case a cotenant is an incompetent. The rule laid down in that case, therefore, seems to be strictly applicable to the present case.

The conclusions of law made at Special Term are annulled, and the judgment reversed, with costs, and judgment directed in favor of the plaintiff for the relief demanded in the complaint.

Upon settlement of the order of reversal herein, appropriate conclusions of law may be proposed, and also such findings of fact, if any, as are necessary to sustain the judgment to be entered herein.

KELLY, P. J., RICH and YOUNG, JJ., concur; MANNING, J., dissents and reads for modification.

MANNING, J. (dissenting). I cannot concur in the opinion about to be announced by a majority of the court in this case. The

controversy concerns two objections interposed by a purchaser at a foreclosure sale, as to the marketability of the title. The first objection is that the notice of sale was not published for a sufficient length of time prior to the sale; the second is that the premises, when purchased by the defendant, were impressed with a trust in favor of a cotenant who is said to be an incompetent although not judicially declared so.

So far as the first objection to the title is concerned, to wit, that twenty-one days did not elapse between the day of the first publication of the notice and the day of sale, I reach the conclusion that this was not necessary, and hence that the objection is not substantial. It is undisputed, and the finding of the trial court is, that the notice of sale was published twice a week for " three successive weeks immediately preceding the sale." This is a compliance with the requirements of the statute, section 986 of the Civil Practice Act. Even if the notice of sale was for twenty instead of twenty-one days, it would be at most a mere irregularity and not in any sense a jurisdictional defect. *Matter of Wright* (224 N. Y. 293) has no bearing upon the facts presented in the present record. The question in the *Wright* case had to do with the service of citations in the Surrogate's Court and involved jurisdictional matters, and the decision of the Court of Appeals in that case was made to accomplish a uniform system in the service of citations issued by such courts. The reasoning of the court, therefore, should be confined to the particular facts presented in that case. The *Wright* case was decided in 1918. In the year 1920, in the case of *Brooks* v. *Brooks* (190 App. Div. 564), our court declined to follow the reasoning in the *Wright* case, and held that six publications of a summons were sufficient where the statute might be construed to require seven. Mr. Justice BLACKMAR, writing for the court in that case, cited *Young* v. *Fowler* (73 Hun, 179), where there was a similar holding, and adopted the conclusion reached in that case rather than the holding in *Matter of Wright*. (See, also, *Wood* v. *Morehouse*, 45 N. Y. 368; *Olcott* v. *Robinson*, 21 id. 150.) Most of the cases relied upon by the purchaser to sustain his first objection to the title will be found to relate to jurisdictional questions, such as the service of a summons or a citation, and do not apply to a mere regulation of practice in the matter of advertising a sale of real property under a judgment of foreclosure. In the case of *City of Albany* v. *Goodman* (203 App. Div. 530), also relied upon by the purchaser, a different situation is disclosed by an examination of the record. In that case the property advertised to be sold belonged to a city of the second class, and section 37 of the Second Class Cities Law expressly provided

that the sale of city property should not be valid unless held at public auction after public notice to be published once each week for three weeks in the official paper or papers. It was held there that a sale held eighteen days after the first publication was not a compliance with that particular statute; and even in that case two of the justices dissented upon the authority of *Wood* v. *Morehouse (supra).* The statute covering the situation in the case just referred to is, of course, a special one and has no application to a sale in ordinary foreclosure actions such as we are dealing with here.

So far as concerns the second ground of objection urged by the purchaser here, to wit, that the title of the defendant was not marketable, because it was impressed with a trust for the beneficiary, his cotenant, I reach the conclusion that the rights of the incompetent can be fully protected by following the proceeds of the sale made to Smith, the plaintiff herein, by the incompetent's cotenant Butler, the purchaser at the foreclosure sale, and by impressing a trust upon such proceeds for the benefit of the incompetent and to the extent of the incompetent's interest in the property. This was the conclusion of the learned court at Special Term, for the third conclusion of law reads as follows: "That Emil Walter, one of the defendants in the foreclosure action is entitled to one-fourth of the net proceeds of sale under said contract, and that the defendant Damon I. Butler hold the same in trust as trustee for the said Emil Walter to the credit of his estate." Unfortunately, however, when the judgment in the action was prepared, this conclusion of law, owing to the carelessness of someone, was not carried into the judgment itself; and when the case came to our court I suggested a modification of the judgment in order that it might conform to what the learned justice below had decided, as I was of the opinion that if this were done the rights of the incompetent would be fully protected. This was my judgment then and I am still of the same opinion.

Upon this appeal the defendant's counsel, in his brief, states that while he does not concur in the conclusion of the trial justice that the bare relationship of the tenancy in common created a fiduciary holding, nevertheless he consents that the proceeds of the sale be impressed with a trust in favor of the incompetent and his estate. In the situation thus revealed, I do not see why the defendant is not in a position to tender a good and marketable title to the plaintiff. The question of holding one-fourth of the net proceeds of the sale for the benefit of the incompetent is a matter between the defendant and the incompetent or the incompetent's estate and is of no consequence to the plaintiff in this

action.   I fail to see why this cannot be done or why the doing of it could in any way injuriously affect the incompetent's rights. Incompetents, like. infants, are wards of the court, and the court can follow trust funds and seize them, wherever found.

The foreclosure proceedings were undoubtedly taken in an honest endeavor to straighten out the title.   The alleged incompetent was made a party thereto, process was duly served upon him, a person was named to receive service of the summons on his behalf, and thereafter a guardian *ad litem* was appointed by the court to represent such incompetent.   The purchaser makes no objection to the regularity of the proceedings taken in the foreclosure action, and his only objections to the title are the two to which I have referred.   One of these objections I consider of no substance.

As I read the record in this case, there is no justification for the suggestion that the foreclosure action was commenced or prosecuted in the defendant's interest, or that there was any intent on his part to overreach or in any manner defraud his cotenant, the alleged incompetent.   The trial court made no finding to this effect, and in fact no such finding could have been made, for there is not a particle of evidence to sustain such a charge.   The learned justice who heard the case at Special Term found, under the authority of *Carpenter* v. *Carpenter* (131 N. Y. 101) and other cases cited by him, that the incompetent had an interest in the property purchased by the defendant at the foreclosure sale, and that such interest was one-fourth of the net proceeds of the sale provided for in the contract between the plaintiff and the defendant, and directed that the defendant Butler hold the said one-fourth of the proceeds of the sale in trust for the alleged incompetent and for the credit of his estate, the court's conclusion being that the incompetent or his estate should not lose the advantage of the bid made by the plaintiff.   The effect of this judgment would be that the incompetent would receive some $1,500, which represents an equal one-fourth part of the amount bid by the plaintiff for the property after the payment of the mortgage held by a third party and any expenses incident to the foreclosure.

As the property has already been sold and the rights of the incompetent fully protected by the judgment in the foreclosure action, it seems to me both unwise and unnecessary to subject the estate of the incompetent to the uncertainty and expense of another sale.   Under the judgment rendered by the trial court, and the modification thereof which I suggested, there is not the slightest chance that by the sale of the property which has been made between the plaintiff and the defendant the incompetent will be deprived of any of his rights.   I think there should be a modifi-

cation so as to provide that one-fourth of the net proceeds of the sale of the property for $9,000 be impressed with a trust in favor of the incompetent and for his benefit and for the benefit of his estate; that the amount thereof be deposited in court; and as so modified, that the judgment should be affirmed.

Judgment reversed upon the law, with costs, and judgment directed for the plaintiff for the relief demanded in the complaint, with costs. Settle order and findings upon notice, in accordance with opinion by JAYCOX, J.